## STATE ex KALVER v LEMON

Ohio Appeals, 7th Dist, Mahoning Co

No 2367. Decided Oct 9, 1936

404

P. J. Mellilo, Youngstown, A. T. Kryzan, Youngstown, and A. L. Burgstaller, Youngstown, for plaintiff.

Vern Thomas, Youngstown, and H. H. Hunt, Youngstown, for defendant.

## OPINION

By THE COURT

This cause is in this Court of Appeals upon an appeal of law from the Court of Common Pleas. The parties occupy the same relative positions in the trial as in the lower court. The relator, who is the appellant, filed a petition in the Court of Common Pleas, against the defendant, who is the respondent, which petition contained allegations substantially as follows: That the relator files his petition as a citizen taxpayer, a member of the committee on the initiative petitions, and signers thereof, hereinafter set forth, for a writ of mandamus to compel John H. Lemon, city clerk of the City of Youngstown, Ohio, to certify to the Deputy State Supervisors of Elections for Mahoning County, Ohio, initiative petitions providing for the repeal of the charter of the City of Youngstown, Ohio, to be voted on at the general election to be held on the 3rd day of November, 1936; that on the 2nd day of July, 1936, a committee, consisting of relator, Frank Porter, Howard L. Kitchen, Frank C. Warburton and Joseph Higley, Sr., designated, pursuant to the provisions of §4227-8 GC, filed with the said respondent, as such city clerk, a duly verified copy of the proposed ordinance, as provided under §4227-6 GC, reading as follows:

"An ordinance to submit the repeal of the charter of the City of Youngstown, Ohio, and to provide for a special election for the election of municipal officers under the General Code of Ohio.

"Section 1. Shall the charter of the City of Youngstown, Ohio, adopted on May 15, 1923, and its amendments, be abolished, and the City of Youngstown, Ohio, returned effective November 15, 1936, to the same form of government as it had prior to and up to January 1st, 1924, and a spe-

cial election be held in the City of Youngstown, Ohio, on February 9th, 1937, to elect municipal officers of the City of Youngstown, Ohio, as provided under the provisions of the General Code of Ohio. §§4249, 4206, 4272, 4275, 4293 and 4303 GC, for the same form of government the City of Youngstown, Ohio, had prior to and up to January 1st, 1924, and to assume office immediately upon their election."

That thereafter, on the 3rd day of September, 1936, initiative petitions containing 1926 names, and more than three per cent. of valid signatures of registered voters of the City of Youngstown, Ohio, were filed with the respondent, as prescribed under §82 of the Charter of the City of Youngstown, Ohio; that thereafter, on September 12th, 1936, a supplemental petition was filed containing the signatures of additional registered voters of the City of Youngstown.

The petition then alleges that on the 3rd of August, 1936, a committee, consisting of the relator, Frank C. Warburton, Frank Porter, John C. Jones and Garfield Williams, and designated pursuant to the provisions of §4227-8 GC, filed with said respondent a duly verified copy of a proposed ordinance, under §4227-6 GC. Then follows another ordinance similar in language and import, but more elaborate in its terms, for the same purpose as in the ordinance hereinbefore quoted. There is apparently no particular distinction between these two ordinances, presumably the second being more in detail and was thought to cover any possible defect in the language of the first.

In the pleadings the ordinance first quoted, with the additional petitions filed thereto, are designated as group one, and in like manner the second proposed ordinance, with subsequent supplemental petitions, are designated as group two. Thereafter, on the 3rd day of September, 1936, initiative petitions containing 1,772 names, and more than three per cent. of valid signatures of registered electors of the City of Youngstown, Ohio, were filed with the respondent, as provided under Section 82 of the Charter of the City of Youngstown, Ohio; that thereafter, on September 12th, 1936, additional supplemental petitions were filed, containing a large number of signers thereto; that for more than a reasonable time the respondent wilfully and purposely withheld the certifying of said initiative petitions to the deputy state supervisors of elections of Mahoning County,

Ohio; that on the 25th day of September, 1936, the relator made demand upon the respondent to certify said petitions to the deputy state supervisors of elections for Mahoning County, Ohio; that the respondent on the same day refused to certify said petitions as demanded; that the city law department refused to see relator to receive a demand to take the above required action. The relator further avers that said initiative petitions contained more than three per cent. of valid signatures of registered electors of the City of Youngstown, Ohio, and were filed with the respondent more than forty days prior to election, as provided under §4227-2 GC, and said respondent unlawfully refused to certify said initiative petitions to the deputy state supervisors of elections for Mahoning County, Ohio, and is attempting to deny to the people of the City of Youngstown, Ohio, the right to vote upon the proposition submitted in said initiative petitions. Wherefore, by reasons of the provisions of §§4227-2 and 4227-3 GC, relator prays the court for an alternative writ of mandamus, commanding said respondent to certify said initiative petitions for the repeal of the charter of the City of Youngstown, Ohio, to be voted on at the general election November 3rd, 1936, to the deputy state supervisors of elections for Mahoning County, Ohio, as provided under the provisions of §4227-2 GC, and for all other and further relief in the premises as may be necessary and proper to fully protect relator's rights in the premises.

The respondent filed an answer to the petition of the relator, to which a motion was filed, which motion was sustained, and thereafter a demurrer was filed, which was overruled, and the respondent then filed an amended answer, which alleged, in part: Now comes the respondent, John H. Lemon, and admits that on the 2nd day of July, 1936, a committee consisting of Frank Porter, Howard L. Kitchen, Frank C. Warburton and Joseph Higley, Sr., filed with the respondent a petition for a proposed initiative ordinance which reads substantially as set forth on pages 1 and 2 of the petition, which initiative petition hereafter will be referred to as petition No. 1. The respondent further admits that on the 3rd day of September, 1936, an initiative petition was filed with the respondent, containing 1,926 names. It is further admitted that on September 12th a supplemental petition was filed, followed by other supplemental petitions. The last of said supplemental petitions was filed on the

15th day of September. It is further alleged that on the 3rd day of August, 1936, a committee consisting of Jacob Kalver, Frank C. Warburton, Frank Porter, John C. Jones and Garfield Williams, filed with the respondent a verified copy of a petition for a proposed initiative ordinance, and reading substantially as set forth on pages 2 and 3 of the petition herein, which initiative petition will be referred to as initiative number two. The respondent admits that on the 3rd day of September, 1936, initiative petition number two was filed in separate parts, containing 1,772 names. It is further admitted that from September 12th to September 23rd, inclusive, supplemental initiative petitions were filed, containing the number of names set forth in the petition. Further answering, this respondent specifically denies that either petition number one or petition number two contains the required number of valid signatures. Further answering, the respondent denies each and every allegation, averment and statement in plaintiff's petition contained.

The answer of the respondent alleges, for a second defense, that during the time said petitions number one and number two were in his custody, and prior to his taking any official action as to the sufficiency of the same, he received numerous withdrawals of signatures on said petitions, and also withdrawals of numerous individual parts of said petitions, and that neither petition number one nor petition number two contained the required number of valid signatures.

Then follow defenses designated as three, four, five, six and seven, which will not be herein quoted, for the reason that this court does not consider that they allege any important defense in this action. The eighth defense reads as follows: Respondent for his eighth defense states that after September 3, 1936, and prior to September 25, 1936, relator filed with the said respondent a written withdrawal signed by majority of the committee, withdrawing certain parts of petition No. 1 and certain parts of petition No. 2; that relator is therefore estopped from objecting to the action of the majority of the committee on September 25th in withdrawing the remainder of said petitions No. 1 and No. 2.

For a ninth defense respondent alleges that at the time of the filing of the petition herein and the granting of the alternative writ, a reasonable time had not elapsed after the expiration of ten days from the filing of said petitions to allow this respondent to determine the sufficiency of these petitions and certify the same to the deputy state supervisors of elections for Mahoning County.

The respondent prays that the writ be denied and the petition dismissed, and that he go hence with his costs incurred.

A reply was filed to the amended answer, which was a general denial of the allegations of said answer, except such as were specifically admitted to be true.

Upon these issues the cause came on for trial, wherein it appears that the relator demanded of the respondent the withdrawal of certain component parts of the petitions, which request was denied by the respondent. Subsequently a majority of all of the members of the two committees hereinbefore mentioned, demanded, in writing, a withdrawal of all of the petitions theretofore filed in this regard with the respondent, who is herein otherwise designated as the city clerk. In response to this demand, Mr. Lemon, the city clerk, turned over to Mr. Warburton, a member of the committee, all of the initiative petitions prior to the commencement of this action, and said petitions, as shown by the evidence, have not since been in the possession of the city clerk. Upon this withdrawal of all of the petitions, as above stated, the respondent bases his defense of not being able to comply with the prayer of the petition and deliver said petitions to the board of deputy state supervisors of elections.

It appears from the evidence that the respondent so gave up possession of these petitions upon the advice of the law director of the City of Youngstown, and who was his authorized legal advisor. The evidence further indicates that a part of said petitions are now in the possession of said law director, and the others in the possession of the brother of said law director. There is no claim in this action that any of said petitions have been destroyed or lost, or that any attempt to regain possession of them by the respondent would have been or would be unavailing. In view of this situation, and the absence of any evidence tending to indicate an impossibility on the part of the respondent to regain possession of these petitions, and mindful of the fact that the law director and his brother are members of the bar of this county, and officers of the court, this court is of the opinion that these alleged excuses of not having possession of the petitions, under the conditions herein-

before expressed, does not constitute a defense or relieve the respondent from the duty of certifying said petitions to the board of elections, if it be herein determined that it is his duty so to do. What has been just said in this connection is not as a criticism of the respondent, for the reason that it does not appear otherwise than that he acted in good faith, upon the legal advice hereinbefore mentioned.

It may be further suggested that the relator made a request for the withdrawal of these petitions, and/or parts thereof, notwithstanding he had been active in the securing of said petitions, and in the filing of same, and his withdrawal evidently came after charges of serious misconduct had been made in the manner in which the names attached to said petitions were secured.

Among other matters of defense it is claimed that the relator was not authorized to commence or maintain this action because he is said to have not been a taxpayer and did not give security for costs. This court is of the opinion that those matters are not available as defenses in this action. The relator did not bring this action on behalf of the corporation, and for that reason §4314 GC is not applicable.

Other provisions of the General Code authorize a party who is beneficially interested to maintain the action of █ mandamus. See §12287 GC. The relator, as a citizen, is a party beneficially interested in that he is one of the petitioners and a member of each committee authorized to act for the petitioners in the filing thereof.

During the trial in the Court of Common Pleas the respondent attempted to offer testimony of extensive irregularities and fraud in the producing of said petitions, such as would render them of no legal effect as petitions, it being claimed that many of the signatures were forgeries, and that the affidavits of the persons purporting to have secured the signatures were also false and untrue. The court consistently refused to admit any of this evidence, and notwithstanding the respondent made the statement that he had a hundred or more witnesses who would testify, in effect, as above stated. The respondent further offered to prove numerous written withdrawals of signers to these petitions in number sufficient to reduce the remaining names upon the petitions below the required percentage necessary to obtain a referendum. This evidence was not admitted by the court. With regard to the re-

fusal of the court to hear testimony of withdrawals by signers of petitions, this court is of the opinion that █ reversible error occurred in this respect. **State of Ohio ex rel Kahle v Rupert, 99 Oh St 17.** But, regarding the refusal of the court to permit the introduction of evidence with regard to fraud and irregularities in the signatures to the petitions, and in the circulation thereof, and the affidavits of the circulators, this court simply says that it is not deciding that proposition, since, from the ultimate conclusions reached by this court, we could not find that prejudicial error intervened in this respect.

In the journal entry asking disposition of the issues in this case by the judge of the Court of Common Pleas, the following appears:

"The court further finds that the signatures on said petitions and the petitions were in all respects sufficient for respondent for the certification by the clerk to the deputy state supervisors of elections for Mahoning County, Ohio."

Upon this proposition it is evident that the court was not advised as to the facts relating thereto, and should not have so found, having refused to hear evidence upon that subject, which presumably would have determined the sufficiency or insufficiency of the petitions.

It was further ordered in the journal entry:

"That the respondent, John H. Lemon, city clerk, certify immediately to the deputy state supervisors of elections for Mahoning County, Ohio, that on the initiative ordinances filed with him on July 2nd, 1936, petitions and signatures in all respects sufficient for respondent were filed with him and containing in number signatures as follows."

Then follows an enumeration of numbers of signers, as hereinbefore stated.

"It is further ordered, adjudged and decreed that the respondent, John H. Lemon, certify immediately to the deputy state supervisors of elections for Mahoning County, Ohio, that on the initiative ordinances filed with him on August 3rd, 1936, petitions and signatures in all respects sufficient were for respondent filed with him, etc."

It was the duty of the clerk to consider and determine whether these petitions upon their face contained sufficient signatures

to authorize the certification thereof to the board of elections, after striking from such petitions the names of all such signers as had filed with him written demand to remove their respective names, and after striking such names, it was his duty to certify the petitions, provided the signatures of electors sufficient in number remained thereon.

The court in its journal entry also ordered, adjudged and decreed that a certified copy of the verified copy of the initiative petitions or ordinances filed with him on July 2nd, 1936, be certified to the deputy state supervisors of elections for Mahoning County, Ohio. It is the holding of this court that there is no such authority found in the statute. §4227-1 GC provides:

"When there shall have been filed with the city auditor if it be a city, or village clerk if it be a village, a petition signed by the aforestated required number of electors proposing an ordinance or other measure, said city auditor or village clerk shall, after ten days, certify the petition to the board of deputy state supervisors of elections of the county wherein such municipality is located."

There is no authority in law to order a certified copy of the verified copy of the initiative petitions or ordinances filed with him. This court is authorized to affirm, reverse or modify the judgment of the Court of Common Pleas, and taking into consideration the environments of this case, the time and expense devoted to the preparation of these petitions, the nearness of the election at which they must be made available, if at all, this court finds it preferable to modify the judgment and decree of the Court of Common Pleas, rather than to reverse, and the judgment is hereby modified as follows: The mandatory writ is allowed, directing the clerk of the City of Youngstown to obtain possession of all the initiative petitions heretofore filed with him, and thereupon to strike therefrom the names of all signers thereto who have heretofore filed written demand for the removal of their respective signatures therefrom, and thereupon, if it appears from the face of said petitions that the required number of signatures remain upon said petitions, the clerk shall forthwith certify the same to the board of elections, where all questions of fraud, irregularity or other questions entering into the sufficiency and validity thereof will be determined.

The judgment of the Court of Common Pleas is affirmed as modified. Counsel for the respective sides will be expected to agree upon a journal entry in conformity herewith.

CARTER, ROBERTS and NICHOLS, JJ.